IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARSHALL HARDY, § <br> ON BEHALF OF HIMSELF AND ALL § <br> OTHERS SIMILARLY SITUATED, § <br> § <br> PLAINTIFF, § <br> § <br> v. § <br> § <br> SDM HOSPITALITY, LLC, § <br> § <br> DEFENDANT. § | CASE NO. 20-CV-3157-S-BK |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 10, now before the Court is Plaintiff's *Motion for Default Judgment*, Doc. 9. For the reasons stated below, Plaintiff's motion should be **GRANTED**.

## I. PROCEDURAL HISTORY

On October 16, 2020, Plaintiff filed his *Original Collective Action Complaint* against Defendant, his then employer, pursuant to the Fair Labor Standards Act ("FLSA"). Doc. 1 at 1-2. The summons was issued and service of process was completed on November 13, 2020. Doc. 5 at 3. When Defendant failed to appear, the Court ordered Plaintiff to move for a default, which was entered on April 13, 2021. Doc. 6; Doc. 7; Doc. 8. Defendant did not respond or otherwise appear, and this motion followed. Doc. 9.

## II. FACTS

Plaintiff alleges in his complaint that, starting in 2015, he worked as a cook at a bar and grill operated by Defendant. Doc. 1 at 4. Plaintiff avers that throughout the entirety of his

employment, he consistently worked more than 40 hours per week, but Defendant willfully failed to pay him time-and-a-half for the hours he worked beyond 40 hours. Doc. 1 at 4-5. Plaintiff seeks an award of damages, attorney's fees, costs, and interest.[1] Doc. 1 at 6-7.

> Plaintiff states the following in his declaration filed in support of the motion at bar:
>
> Defendant . . . employed Mr. Hardy from approximately February 9, 2016 through September 28, 2020. Mr. Hardy was employed as a cook at SDM Hospitality, LLC d/b/a McCullar's Irish Pub & Grill. Suit was filed in this matter on October 16, 2020. As such, the relevant period for a three[-]year statute of limitations is from October 16, 2017 through September 28, 2020.
>
> During Mr. Hardy's employment with SDM Hospitality, LLC, he was paid $10 an hour for all hours worked, whether above or below 40, until September 23, 2019, when he was given a $1.00 raise to $11.00 an hour. At that point, he was paid $11.00 an hour for all hours worked, whether above or below 40 hours per workweek. At no point in time was he ever paid an overtime premium for hours worked over forty per workweek.
>
> Mr. Hardy kept the vast majority of his paychecks. A true and correct summary of these paychecks [and] . . . true and correct copies of Mr. Hardy's paychecks are attached to Mr. Hardy's Declaration . . . For the four weeks where he was missing a paycheck, he took the average amount of overtime he worked per week, 51.50 [sic] hours (as reflected on the spreadsheet), and used this figure as his hours worked. As he was only paid straight time for all hours worked over forty per workweek, he is owed half time for all hours over forty per workweek. As set forth in Attachment A to Mr. Hardy's Declaration, Mr. Hardy is owed $8,635.22 hours [sic] in actual damages.

Doc. 9-1; Doc. 9-2 (summary of paychecks); Doc. 9-3 (copies of paychecks).

### III. APPLICABLE LAW

*A. FLSA*

The FLSA imposes both a minimum wage and maximum hours restriction on employers. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (citing 29 U.S.C. §§ 206-207). Regarding the first restriction, the FLSA sets a national minimum wage of $7.25 per hour.

---

[1] Although Plaintiff originally filed this suit as a collective action, he now seeks damages only on his own behalf.

29 U.S.C. § 206(a)(1)(C). As to the latter provision, the FLSA requires that employers pay their employees at a rate equal to at least one and one-half compensation of the normal hourly wage when the employee works more than 40 hours per week. 29 U.S.C. § 207(a)(1). The FLSA's minimum wage and maximum hours requirements, however, only apply if either the employee or the employing business enterprise is engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 206(a), 207(a)(2); *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 785-86 (5th Cir. 2020) (citations omitted). These theories of recovery are referred to as individual coverage and enterprise coverage, respectively. In his complaint, Plaintiff relies on both. Doc. 1 at 3-4.

For an employee to qualify as being "engaged in commerce," their work must be "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (quoting *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324 (1960)). Employees are considered engaged "in the production of goods for commerce" if they are involved with any "incidental operation preparatory to putting goods into the stream of commerce." *Western Union Telegraph Company v. Lenroot*, 323 U.S. 490, 503 (1945).

Concomitantly, to demonstrate enterprise coverage, a business has to either "ha[ve] employees engaged in commerce or in the production of goods for commerce" (the "engaged-in clause") or "ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" (the "handling clause"). *Molina-Aranda*, 983 F.3d at 786 (citation and internal punctuation omitted). An enterprise "may consist of a single establishment operated by one or more employers." 29 C.F.R. § 1620.7. Finally, to

fall under FLSA coverage, the enterprise's "annual gross volume of sales made or business done [must not be] less than $500,000." *Biziko v. Van Horne*, 981 F.3d 418, 420 (5th Cir. 2020).

To sum up, an employee bringing an action for unpaid overtime compensation must demonstrate: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) the employee engaged in activities that fall under FLSA coverage; (3) the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *Johnson v. Heckmann Water Resources (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

B.  *Default Judgment*

The conditions upon which a default may be entered against a party, as well as the procedure to seek the entry of default judgment, are found in Rule 55 of the Federal Rules of Civil Procedure.  As an initial matter, the moving party must establish that the nonmovant (1) has been served with the summons and complaint and default was entered due to their failure to appear; (2) the defendant is neither a minor nor an incompetent person; (3) the defendant is not in military service or otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) if the defendant has appeared in the action, they were provided with notice of the application for default judgment at least three days prior to any hearing on the matter. FED. R. CIV. P. 55.  The entry of a default judgment thereafter is the culmination of three events: (1) default, which occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure; (2) entry of default by the clerk of court when such default is established by affidavit or otherwise; and (3) application by plaintiff for a default judgment after the entry of default. FED. R. CIV. P. 55(a); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

Standing alone, however, a defendant's default does not entitle a plaintiff to a default judgment. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). The decision to grant a default judgment is one soundly within the district court's discretion. *Id.* "Default judgments are a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). "[T]hey are available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* (citation omitted). Once entered, "[a] default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "Put another way, '[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *Id.* (quoting *Nishimatsu Constr.*, 515 F.2d at 1206).

The sufficiency of a complaint in the default judgment context is considered vis-à-vis the low threshold set forth in Rule 8 of the Federal Rules of Civil Procedure. *See Wooten*, 788 F.3d at 497-98 & n.3 (considering sufficiency of complaint in default judgment action under Rule 8 standard and expressly declining "to import Rule 12 standards into the default-judgment context."). In addition, a court may conduct hearings when, to enter or effectuate judgment, it needs to, *inter alia*, "establish the truth of any allegation by evidence . . . or . . . investigate any other matter." *Id.* at 496 (citing FED. R. CIV. P. 55(b)(2)(C)).

Finally, while a default judgment may conclusively establish a defendant's liability, it does not establish the quantity of damages. *The Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019) (citation omitted), *as revised* (June 6, 2019). The court may conduct an evidentiary hearing to determine the amount of damages to which a plaintiff is entitled. FED. R.

CIV. P. 55(b)(2). A court also may determine damages without convening a hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (citation and internal quotation marks omitted). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993). Thus, where a plaintiff submits an affidavit and supporting documents demonstrating that the damages are in an amount certain, the entry of a default judgment in that amount without the need for an evidentiary hearing is permissible. *Leedo Cabinetry*, 157 F.3d at 414.

### IV. PLAINTIFF'S ARGUMENT

Plaintiff asserts that he is entitled to the entry of a default judgment against Defendant because the Clerk properly entered a default, and he can establish damages, attorney's fees, and costs via simple mathematical computations as detailed in his and his attorney's supporting declarations. Doc. 9-1 (Hardy Decl.); Doc. 9-4 (Welmaker Decl.). Specifically, Plaintiff requests that the Court enter judgment for (1) $8,635.22 in unpaid wages; (2) $8,635.22 in liquidated damages; (3) $2,257.50 in attorney's fees; and (4) costs totaling $517.95. Doc. 9 at 5-6.

### V. ANALYSIS

#### A. Well-Pleaded Factual Allegations

Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Detailed factual allegations are not required, but the complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Fifth Circuit has held that a plaintiff sufficiently alleged an enterprise FLSA violation when he claimed the defendants triggered the handling clause "by employing more than 11 drivers and hauling water, sand, gravel[,] and construction and oilfield equipment both interstate and intrastate," and "handling, selling, or otherwise working on goods or materials (such as heavy trucks, fuel and equipment) that have been moved in or produced for commerce by any person."  *Molina-Aranda*, 983 F.3d at 786.

Turning to the sufficiency of Plaintiff's allegations, he has adequately pled that (1) he was employed by Defendant; (2) Defendant violated the FLSA's overtime wage requirements by failing to compensate him for overtime work; and (3) he lost wages as a result of the FLSA violation.  Doc. 1 at 4; *Molina-Aranda*, 983 F.3d at 788.  The closer question is whether Plaintiff has successfully alleged that he engaged in activities subject to FLSA coverage by virtue of either an individual or enterprise theory of liability.  Plaintiff asserts both theories of coverage in his complaint, but only one is sufficiently pled.

In terms of individual coverage, Plaintiff simply alleges that he and the proposed Class Members "engaged in commerce or in the production of goods for commerce." Doc. 1 at 4.  This conclusory statement is not sufficient to put Defendant on notice of Plaintiff's reliance on the individual coverage provision of the FLSA.  Indeed, Plaintiff's motion for default judgment discusses only enterprise coverage, so any argument he may have had regarding individual coverage is likely waived.  *See* Doc. 9 at 1 ("Plaintiff has pled that SDM Hospitality, LLC is liable as an employer . . . and that enterprise coverage exists in this matter."); *United States v.*

*Olano*, 507 U.S. 725, 733 (1993) (holding that waiver is the intentional abandonment of a known right).

The Court reaches a different conclusion, however, with respect to enterprise coverage. In keeping with that theory, Plaintiff alleges that "[d]uring the relevant period, Defendant has violated and is violating . . . [the FLSA] by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as stated herein above, for workweeks longer than 40 hours without compensating" them as required. Doc. 1 at 6. With regard to the commerce aspect, Plaintiff avers that he and the Class Members "handled and otherwise worked with equipment, such as telephones, computers, ovens, stoves, dishwashers, kitchen supplies, cleaning supplies and other restaurant supplies and equipment that have been moved in or produced for commerce." Doc. 1 at 3-4.

This case is similar to *Molina-Aranda*. There, the Fifth Circuit held the plaintiffs adequately alleged enterprise coverage by asserting that (1) the defendants employed multiple drivers to haul water, sand, gravel, and construction supplies both into and out of the state and (2) the plaintiffs worked with equipment that had moved in or been produced for commerce. *Molina Aranda*, 983 F.3d at 786. The court concluded:

> at least some of these items are plausibly goods or materials: they are all items one could plausibly conclude are used in or produced during construction and trucking work. It is also plausible that some or all of these items had travelled interstate at some point in their life cycle. Texas is a large state with considerable industrial capacity, but it does not stretch the definition of plausible for Plaintiffs to allege that at least some of the raw materials and machinery that they handled came from beyond Texas's borders.

*Id.* at 787 (cleaned up). The Court finds similarly here. Plaintiff has adequately alleged enterprise coverage via his allegations that he and the Class Members handled general office equipment, such as telephones and computers, in addition to the types of machinery and

equipment that would typically be found in a restaurant and plausibly could have been moved in or produced for interstate commerce. *Id.*

### B. *Damages, Interest, and Costs*

#### 1. *Damages*

As previously noted, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing. *James*, 6 F.3d at 310 (citation omitted). Nevertheless, a hearing is not required if the claimed damages are a liquidated sum or one capable of mathematical calculation. *Id.* Notably, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).

In support of his motion, Plaintiff states in his declaration that (1) he worked for Defendant from February 2016 through September 2020; and (2) he was paid $10 per hour until September 2019 when he received a $1.00 raise. Doc. 9-1. Plaintiff attaches to his declaration copies of all but four of his paychecks and a summary of his overtime hours and amount owed. Doc. 9-2; Doc. 9-3. With respect to the missing paychecks, Plaintiff calculated the overtime pay owed by using the average amount of overtime he worked per week which was 11.5 hours. Doc. 9-1 at 1.

As an initial matter, the Court has determined that an evidentiary hearing is not required in this case because Plaintiff submitted a sworn declaration and supporting documents demonstrating that the damages he has sustained are in an amount certain. *Leedo Cabinetry*, 157 F.3d at 414. Accordingly, upon review of the relevant supporting documents, the Court finds that Plaintiff's total amount of actual damages is $8,635.22. Doc. 9-2 at 4.

Plaintiff also requests liquidated damages in the same amount. Doc. 9 at 2-3. The FLSA provides that an employer who violates its provisions "shall be liable to the employee or

employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages are not mandatory "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [FLSA]." 29 U.S.C. § 260. An employer "faces a substantial burden of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003) (citation and quotation marks omitted). In this case, Defendant clearly did not meet this burden in light of its default. Plaintiff is thus entitled to liquidated damages of $8,635.22.

    2. *Attorney's Fees*

In his motion, Plaintiff seeks to recover attorney's fees from Defendant in the amount of $2,257.50 based on the 4.3 hours of work counsel performed at his stated hourly rate of $525.00.[2] The Court notes that counsel deducted all billed paralegal time as well as one hour of his own time in reaching this amount. Doc. 9 at 5.

The Court of Appeals for the Fifth Circuit employs a two-step process when determining an award of attorneys' fees. *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010) (citing *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 192 (5th Cir. 1999)). The first step is the lodestar calculation, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* In evaluating the number of hours claimed, courts determine "whether the total hours claimed are reasonable [and] also

---

[2] There are some internally inconsistent calculations in counsel's declaration, Doc. 9-4 at 2, but it appears that the correct fee total is the $2,257.50 requested in the instant motion (which is also the lesser of the two amounts noted). *Cf.* Doc. 9-4 at 2 (listing fee of $3,360.00).

whether particular hours claimed were reasonably expended." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995). Further, the party seeking attorneys' fees bears the burden of establishing the prevailing market rate for similar services. *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Following the calculation of the lodestar, the Court then must determine whether to adjust the fee on the basis of several other factors that may be of significance in the particular case.[3] There is a strong presumption that the lodestar calculation represents a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

Having reviewed counsel's declaration and the supporting evidence, the Court concludes that 4.3 hours of billable work is eminently reasonable. *La. Power & Light Co.*, 50 F.3d at 325. Further, the undersigned finds that counsel's requested hourly rate of $525.00 is reasonable for an attorney practicing in the field of employment law with comparable experience. *See Vela v. M&G USA Corp.*, No. 2:17-CV-13, 2020 WL 421188, at *4 (S.D. Tex. Jan. 27, 2020) (approving hourly rates of $400-$500 where all three attorneys had practiced for at least nine years, including in employment litigation). That rate is also consistent with hourly rates Plaintiff's counsel has been awarded in other FLSA cases. *See Garcia v. Von Grist, Inc.*, No. MO20-CV-00093-DC-RCG, 2021 WL 2784475, at *6 (W.D. Tex. May 5, 2021), *adopted by* 20-CV-093-DC, 2021 WL 2784473 (W.D. Tex. May 27, 2021) (approving hourly rate of $525.00 in

---

[3] *See Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors consist of: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

FLSA default judgment case); *Carranza v. Cirlos*, No. 2:18-CV-4119, 2020 WL 4679572, at *1 (S.D. Tex. May 11, 2020) (hourly rate of $500.00).

    *3. Interest*

Prejudgment interest is not available for FLSA claims that seek compensation for unpaid overtime wages and liquidated damages. *Knowlton v. Greenwood Indep. Sch. Dist.*, 957 F.2d 1172, 1183 (5th Cir. 1992). Plaintiff is entitled to post-judgment interest, however. 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a) (internal footnote omitted). Thus, Plaintiff is entitled to an award of post-judgment interest at the Court's published rate for the week prior to the date of judgment until the date the judgment is paid. *See id.* § 1961(b).

    *4. Costs*

Finally, Plaintiff requests an award of costs for the court filing fee of $400.00 and the $117.95 cost associated with serving Defendant with this suit. Doc. 9 at 5. "Unless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party." FED. R. CIV. P. 54(c)(1). In addition to the taxable costs listed under 28 U.S.C. § 1920, some Texas district courts have determined that additional costs may be awarded "to prevailing parties in FLSA cases as part of a reasonable fee." *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 629-30) (W.D. Tex. 2015); *see also Dobson v. Timeless Rests., Inc.*, 2017 WL 1330164, at *7 (N.D. Tex. April 11, 2017) (Lindsay, J) (finding that plaintiffs were entitled to recover for various non-taxable costs, including the costs for

travel, meals, parking, lodging, and postage); *Rouse v. Target Corp.*, 181 F.Supp.3d 379, 392 (S.D. Tex. 2016)) ("costs for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment litigation expenses are also recoverable under the FLSA as part of an attorney's fee award." (citations omitted)). Upon review, the undersigned finds that the costs Plaintiff requests are reasonable and compensable and should be awarded in the requested amount of $517.95.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Default Judgment*, Doc. 9, should be **GRANTED** and judgment entered in Plaintiff's favor to the extent stated here.

**SO RECOMMENDED** on January 10, 2022.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).